[Civ. 24004.   First Dist., Div. One.   Mar. 21, 1968.]

EDWIN CECHETTINI et al., Plaintiffs and Respondents, v. CONSUMER ASSOCIATES, LTD., et al., Defendants and Appellants.

Llewellyn Johns for Defendants and Appellants.

Stephen H. Kaufmann for Plaintiffs and Respondents.

ELKINGTON, J.—Plaintiffs and respondents Cechettini, Wexler, Anker, Abrams, Stark and Saltman, and two others, were the owners of the outstanding stock of defendant and appellant Consumer Associates, Ltd. (hereinafter called ''Consumer''). Consumer was a lessee'of real property. To secure performance of the lease each of the plaintiffs had posted with the lessor cash or securities of the value of $6,000.

Defendant and respondent Jackson Perego desired to purchase all of the outstanding capital stock of Consumer for $25,000. Plaintiffs indicated their assent provided that Perego would substitute his own securities with the lessor in place of that which had been posted by plaintiffs. Perego advised plaintiffs that he was then unable to make such a substitution. He suggested that plaintiffs allow their security to remain posted for two years at which time he would post his own security and allow that of plaintiffs to be exonerated. As a guaranty against loss of their securities he offered to give each

plaintiff his personal two-year promissory note for $6,000, with interest payable monthly, such note to be cosigned by Consumer. Plaintiffs assented to this proposal.

The entire transaction was thereafter completed. During the course of its consummation Consumer's board of directors was reorganized. All plaintiffs who were directors resigned. Perego was elected director while certain of his nominees were named the remaining directors. Perego and his wife were elected president and secretary, respectively. The directors thereupon authorized the new officers, on behalf of Consumer, to cosign the six $6,000 promissory notes which are the subject of this appeal. The notes were signed by Perego individually and by Perego as president, and Mrs. Perego as secretary, of Consumer. They were thereupon delivered to plaintiffs.

Within two years Consumer and Perego defaulted in payment of the interest on the promissory notes, and Consumer defaulted on the lease. It appears that plaintiffs' posted security was forfeited to the lessor. The instant action on plaintiffs' promissory notes followed. From a judgment, in favor of each plaintiff for the amount of $6,000 and accrued interest, Consumer and Perego appeal.

DEFENDANTS' FIRST CONTENTION: "There was no substantial evidence to support the finding that plaintiffs gave adequate and valuable consideration for the notes."

Defendant Consumer contends that it received no consideration for signing the notes in question since it had been in no way obligated to maintain security for the lease. The corporation insists that because it received nothing as a result of the transaction it cannot be held liable on the notes. Defendant Perego points out that he received no consideration for the notes since the plaintiffs were bound by contract with the lessor to maintain the security for the lease. It follows, he says, that each plaintiff gave nothing for his note; he simply agreed to do what he was already bound to do. Both defendants contend that the agreement to sell Consumer's capital stock for $25,000 was a separate transaction from that concerning the notes and the lease security.

It should be noted that the written agreement between the parties relating to the lease security and the promissory notes in question provided, among other things: "This agreement is part of that certain agreement for the sale of the capital stock of Consumer Associates, Ltd., entered into by and between Perego and the Stockholders of said corporation, . . . Performance of said agreement for the purchase of said stock

shall be a condition precedent to this agreement.'' Elsewhere the evidence shows that without the promissory notes plaintiffs would not have executed their agreement to sell Consumer's capital stock.

. █ It is settled law that where two or more written instruments are executed contemporaneously with reference to each other, for the purpose of attaining a preconceived object, they must all be construed together and effect given if possible to the purpose intended to be accomplished. (*Burnett* v. *Piercy,* 149 Cal. 178, 189 [86 P. 603] ; *Collins* v. *Homes Sav. & Loan Assn.,* 205 Cal.App.2d 86, 98 [22 Cal.Rptr. 817].)

In *House* v. *Lala,* 214 Cal.App.2d 238, 243 [29 Cal.Rptr. 450], the court stated: ''The law does not require that every part of the bargained-for consideration shall be of a kind that would be operative to make a return promise binding. It is enough that any part of it is of such a kind. If the bargained-for performance which is rendered includes something that is not within the requirements of a preexisting duty, the law of consideration is satisfied. 'It makes no difference that the agreed consideration consists almost wholly of a performance that is already required and that this performance is the main object of the promisor's desire. It is enough that some small additional performance is bargained for and given.' (Corbin on Contracts (1 vol. ed.) p. 275.) ''

█ It follows that plaintiffs' agreement to sell their capital stock to Perego was consideration for the execution by him of the promissory notes.

█ The evidence also showed consideration to Consumer for cosigning Perego's notes. That consideration was the agreement of plaintiffs to sell their Consumer stock to Perego. It is well established that a consideration for a contract is equally valuable whether it move to the other party bound or to a third party. Consideration does not have to move to a promisor. (*Anchor Cas. Co.* v. *Surety Bond Sav. & Loan Assn.,* 204 Cal.App.2d 175, 181-182 [22 Cal.Rptr. 278] ; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 66, p. 70.)

Here there was no fraud or unfairness, nor were any creditors' or dissenting shareholders' rights involved. Perego, as owner of 100 percent of Consumer's stock, directed the passage of a corporate resolution authorizing the execution of the notes by himself as president and his wife as secretary. In *Armstrong Manors* v. *Burris,* 193 Cal.App.2d 447 [14 Cal.Rptr. 338], where a contention somewhat similar to that here pressed was made, the court stated (pp. 455-456) : '' 'A pri-

vate corporation may exercise many extraordinary powers, provided all of its stockholders assent and none of its creditors are injured. There is no one to complain except the state, and, the business being entirely private, the state does not interfere.'

"The provisions of section 311 of our Civil Code are substantially incorporated in our present Corporations Code, section 820, which provides, in substance, that no transaction between a corporation and its directors is void or voidable because of the participation of a director where the directorship or financial interest is fully known to all concerned and the board approves or ratifies the transaction in good faith by a vote sufficient without counting the vote of the director involved, or where the directorship or financial interest is fully known to the shareholders and they approve or ratify the transaction in good faith by a majority vote or written consent of shareholders entitled to vote, or where the contract or transaction is just and reasonable as to the corporation at the time it is authorized or approved. Interested directors may be counted in determining the presence of a quorum. While proceedings here were of the informal type common to such circumstances, there can be no question under the evidence that the Armstrong family, holders of 100 percent of the stock, fully approved and ratified what was done.

"In the case here at bar, we are dealing with what is sometimes spoken of as a 'closed corporation,' in which all of the shareholders and directors had full and complete knowledge of everything that was going on and approved of every act which took place. We have neither allegation nor proof that any creditors are complaining. As was said in *Brainard* v. *De La Montanya,* 18 Cal.2d 502, 511 [116 P.2d 66] :

" ' 'We must therefore treat the stockholders in the present case as the "only beneficiaries of the trust" and, under the findings, all that was done by defendant was done after full disclosure and with the full knowledge and consent of all said beneficiaries.' "

We conclude that there was substantial evidence supportive of the trial court's findings that plaintiffs gave adequate and valuable consideration for their promissory notes.

DEFENDANTS' SECOND CONTENTION : "The court erred in sustaining objections to questions pertaining to consideration for the notes sued on."

Perego was asked by his attorney. "Mr. Perego, did you receive anything from the plaintiffs for the promissory notes

that have been introduced in evidence?'' An objection was sustained on the ground that the question attempted to vary the terms of the transaction's several written instruments. In the context it apparently seemed to the trial court, as it does to us, that the question called for Perego's conclusion on the legal effect of the transaction as established by the documents. If that was the purpose the objection was of course properly sustained. In any event counsel pursued the subject of the question no further, and neither at that time nor at any other time during the trial did he, by offer of proof or otherwise, indicate that an answer to the question would have been material or *beneficial* to his case.

In *Brown* v. *Southern Pac. Co.*, 92 Cal.App.2d 639, 644 [207 P.2d 632], the court said: "'Where a question to which an objection is sustained does not itself indicate that the answer to it will be favorable to the party seeking to introduce the testimony, before the ruling will be reviewed on appeal by this court, an offer of what is proposed to be proven must first be made to the trial court, so that this court can determine whether the proposed evidence would have been *material* and *beneficial* to the party offering the evidence [citations]. There was nothing in the question asked to indicate the answer nor was any offer of proof made which even indicated that counsel expected an affirmative answer to the question. [Citations.] Therefore the record fails to show any error in this ruling.'" This rule has been consistently followed by the courts of this state. (See *MacDonnell* v. *California Lands Inc.*, 15 Cal.2d 344, 349 [101 P.2d 479] ; *People* v. *Ratten*, 39 Cal.App.2d 267, 270 [102 P.2d 1097] ; *Newman* v. *Sunde*, 23 Cal.App.2d 332, 335 [73 P.2d 260] ; *Grandy* v. *Southern Pac. Co.*, 9 Cal.App.2d 441, 444 [49 P.2d 1127].)

Accordingly the record does not indicate error in the court's ruling.

DEFENDANTS' THIRD CONTENTION: ''Co-signing of the promissory notes by Consumer was unlawful and said promissory notes were therefore void.''

Here defendants contend that certain plaintiffs, while directors of Consumer, violated their fiduciary duty to that corporation by authorizing it to sign their individual promissory notes.

Defendants err in their factual basis for the instant argument. The record shows that none of the plaintiffs was a director when the resolution authorizing the corporation to sign the promissory notes was adopted. That resolution was

passed by Perego and his nominee directors. But in any event here, as said in *Armstrong Manors* v. *Burris, supra,* 193 Cal. App.2d 447, 456, "we are dealing with what is sometimes spoken of as a 'closed corporation,' in which all of the shareholders and directors had full and complete knowledge of everything that was going on and approved of every act which took place." No creditor's rights are involved. In such a situation Perego, the sole shareholder, not the corporation, must be treated as the beneficiary of the director's trust. (See *Brainard* v. *De La Montanya, supra,* 18 Cal.2d 502, 511.)

It should be noted that Corporations Code section 823 expressly allows a corporation to guaranty the obligation of an officer or director by vote or written consent of the holders of two-thirds of the shares, not including the shares held by the benefited officer or director. This would allow such a guaranty even if there be some dissenting shareholders.

Here Perego was the sole object of the corporate directors' fiduciary duty. He voted and gave his written consent to the promissory note transaction. Thus 100 percent of the shareholders approved. The transaction was not unlawful and neither Consumer nor Perego has reasonable or legal complaint.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.